PASCUAL QUIÑONES, ETC., Plaintiff and Appellant, *v.* PASCUAL QUIRÓS MARTÍNEZ, Defendant and Appellee.

No. 12262. Decided December 21, 1961.

*Miguel A. Ruiz* and *Fernando Pérez Rejis* for the Legal Aid Society (Ponce) for appellant. *Jorge Díaz Cruz* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

Minor Pascual Quiñones, represented by his mother Pastora Quiñones, filed an action of filiation and support against the appellee. The minor was born on December 23, 1943. The trial court dismissed the complaint. It concluded as a question of fact that the defendant and the minor's mother met some time in June 1941, while she was married but separated from her husband, and that the former made love to her, wrote her letters, and that they were sweethearts. In October 1941, Pastora Quiñones divorced her husband and the defendant continued to court her until 1943. During one of the first months of 1943, he invited her to come and live with him in his mother's house and thus came to live together in April of that year. Three or four months later the defendant was inducted into the armed forces and during his absence he continued to write to Pastora. She did not answer and their relations came to an end. Pastora abandoned the defendant's house (in the middle of November 1943, according to the evidence) and gave birth in her parents' house. The defendant returned early in 1945 and married afterwards. While in the Army he was informed by the authorities that Pastora claimed that he was the father of her child, which he denied. Resolving an apparent conflict in the evidence, the court concluded that the plaintiff minor never enjoyed the continuous possession of the status of natural son of the defendant. The court noted the fact that on

March 10, 1947 this Court rendered judgment of acquittal in a criminal case brought against the defendant for abandonment of this minor.[1] Lastly, the court made the following finding of fact:

"The court made an observation on the physical characteristics between the defendant and the plaintiff. We conclude that the defendant is white-skinned. The plaintiff minor, on the contrary, is very dark-skinned. Pastora Quiñones is brown-skinned. We further conclude that Dulcidio Casiano is very dark-skinned. The court did not notice any physical resemblance between the defendant and the plaintiff minor. On the contrary, the undersigned judge was deeply impressed by the extraordinary lack of resemblance between the plaintiff minor and the defendant."

Among its conclusions of law the court determined, after citing § 125 of the Civil Code (1930 ed.) regarding the father's obligation to recognize the natural child... "when the mother was known to have lived in concubinage with the father, both during her pregnancy and at the time of the birth of the child," that the evidence heard, on which the preceding facts were found proved, disclosed that Pastora Quiñones, mother of the plaintiff minor, was known to be living in concubinage with the defendant during part of the pregnancy. However, it was of the opinion that the fact alone of having been known to have lived in concubinage with plaintiff's mother did not necessarily mean that the defendant was the father of the said minor, and that, on the contrary, in this case *there was a set of facts and circumstances which pointed to the nonpaternity*, among which was the fact that at the commencement of the concubinage Pastora Quiñones was one-month pregnant, and that in 1942 and 1943 she had love relations with Dulcidio Casiano; that there was no

---

[1] Unpublished per curiam decision, *People* v. *Pascual Quirós*, No. 11,724. In the light of the requirements of evidence necessary in a criminal case and of the evidence offered in that case, it was concluded that the latter was insufficient to warrant conviction.

physical resemblance between the plaintiff minor and the defendant, while there was a physical resemblance between the minor and Dulcidio Casiano. It therefore dismissed the complaint.

Before approaching the problem with which we are actually concerned at this time, it must be said that the record does not support with a degree of minimum conviction that the minor's mother had *love relations* with the said Dulcidio. Only two witnesses testified on this fact. One was Epifanio González, who said that he saw Pastora Quiñones and Dulcidio in a dance in Santiago Lugo's house, a family house where dances were held, and that on two or three other occasions he saw them in baseball games in a rural league talking amicably, friendly. He did not know what was going on. He said that this was in 1943. The witness was a third baseman. The other person who testified on this fact was Clemente Matos. He said that he had seen Dulcidio Casiano in the company of Pastora and in dances on two or three occasions. He saw them holding hands in Amalio Casiano's house. This was, he said, late in 1943, more or less.

As respects Dulcidio, Pastora testified that she knew him since he was born and that she visited his parents' house because his father was a cousin of her mother, a fact which was not controverted. In other words, between Dulcidio Casiano and Pastora Quiñones the relationship was in the sixth degree.

There is no substantial evidence in the record to conclude that there was a love affair between Dulcidio and the minor's mother in the crucial moment, that is, when she could have conceived the plaintiff. On the other hand, there is nothing in the record to render impossible the fact that this woman could conceive by the defendant during the crucial period.[2]

---

[2] The child was born on December 23, 1943. The average duration of pregnancy is 266 days and the delivery occurs 10 lunar months (280 days) following the first day of the last menstrual period. Eighty per cent of the deliveries occur within the period of two weeks before or two weeks

However, the immediate problem before us at this time is different: the defendant used a photograph where three persons appeared, one of whom was identified by some of his witnesses as Dulcidio Casiano. The trial court refused to admit that photograph in evidence, among other reasons, because there was no evidence of the circumstances under which it was taken and of the other situations, and it ordered that it be marked as evidence offered but not admitted. In the finding of fact transcribed above the court stated that the defendant was white-skinned, the plaintiff's mother was brown-skinned, and that the minor was very dark-skinned; that it had not observed any physical resemblance between the defendant and the plaintiff, and that it was impressed by the lack of such physical resemblance. In its conclusions of law it went even farther and determined *that there was a physical resemblance between the minor and Dulcidio Casiano.* The court leaves no room for doubt that these facts had a great influence in the decision of the case.

An error was evidently committed which rendered the plaintiff defenseless. Dulcidio Casiano never appeared before the court and the court used, in a basic and decisive aspect, certain evidence which it had not admitted. The appellee merely alleges that the court realized its error in deciding that it had unduly refused to admit such evidence and that it cured the error. The worst part is that the plaintiff was prevented from offering evidence to controvert the effects of such evidence, had the latter been admitted in the course of the trial.

We do not propose at this time to make an incursion into the ambit of the Augustinian Mendel and the complex, whimsical, and even mysterious genetics laws of inheritance. That would be to speculate without a sound basis in the

---

after the calculated date. 5 Lawyers' Medical Cyclopedia 369. According to the record, it is not impossible that at the time the defendant urged the plaintiff to come and live with him, which she did, conception may have taken place.

record, particularly since the trial court only mentions the color, and we know of no other racial characteristics of the minor. Altenburg, Genetics—The Negro-White Cross 76–83 (1957 rev. ed.) (Library School of Medicine of the U.P.R.) ; Dobzhansky, Evolution, Genetics, and Man—Inheritance of the Skin Color in Man 40–42 (1955) (Library School of Medicine of the U.P.R.).

Since possibly it is difficult for the trial court to make new findings after wholly eliminating any knowledge of the evidence excluded, it is hereby ordered that upon remanding the case the plaintiff be permitted to offer evidence, including expert testimony, which may serve to controvert the evidence considered by the court, as well as any other evidence of both parties which may shed light on the situation and do justice to whoever it may correspond.

The judgment appealed from will be set aside.

